T.C. Memo. 2017-228

UNITED STATES TAX COURT

CRAIG K. POTTS AND KRISTEN H. POTTS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12116-16L.                    Filed November 20, 2017.

<u>John S. Jagiela</u>, for petitioners.

<u>Trisha S. Farrow</u> and <u>Rachael J. Zepeda</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case petitioners seek

review pursuant to section 6330(d)(1)[1] of the determinations by the Internal

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all monetary amounts to the nearest dollar.

[*2] Revenue Service (IRS or respondent) to uphold notices of intent to levy with respect to petitioners' unpaid Federal income tax liabilities for 2005 and 2013. Respondent has moved for summary judgment under Rule 121, contending that there are no material facts in dispute and that his determination to sustain the proposed collection action was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached affidavits and exhibits. See Rule 121(b). Petitioners resided in Arizona when they filed their petition.

On August 7, 2007, petitioners filed a delinquent Federal income tax return for 2005. On this return they reported taxable income of $30,769,612 and a tax liability of $2,166,225. The IRS assessed the tax liability as reported plus additions to tax under sections 6651(a)(1) and (2) and 6654(a).

The IRS selected petitioners' 2005 return for examination and proposed a substantial deficiency. After filing a protest, petitioners reached a settlement with the IRS Appeals Office. Petitioners thereby agreed to a deficiency of $2,978,789 for 2005 plus an addition to tax of $509,136 under section 6651(a)(1).

[*3]    This settlement was memorialized on Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment.  Petitioners' authorized representative signed the Form 870-AD on February 15, 2013.  An IRS appeals team manager accepted the offer on March 1, 2013.

By executing the Form 870-AD petitioners agreed to "waive the restrictions provided in section 6213(a) * * * and to consent to the assessment and collection of the deficienc[y] and addition[] to tax" as set forth above.  The agreement provided that, upon acceptance of petitioners' offer, the IRS would not reopen the case absent fraud, malfeasance, misrepresentation of a material fact, or an important mistake in mathematical calculation.  On April 4, 2013, the IRS assessed the agreed-upon deficiency and addition to tax for 2005, together with applicable interest, for a total additional assessment of $4,921,701.

Petitioners did not pay any portion of this assessed liability.  Instead they submitted to the IRS, on September 23, 2013, a Form 656-L, Offer in Compromise (OIC) (Doubt as to Liability).  The IRS rejected this OIC on January 30, 2014.  The IRS determined that there was no doubt as to petitioners' liability for 2005, and hence no basis for compromising their tax, because they had consented to a settlement with the IRS Appeals Office and signed a Form 870-AD.

**[*4]**   For their 2013 taxable year petitioners filed a timely return but did not pay the tax shown as due.  The IRS assessed the tax for that year plus additions to tax under sections 6651(a)(2) and 6654(a).  Petitioners subsequently filed amended returns for 2013.  On the basis of those amended returns the IRS abated part of petitioners' 2013 tax liability, but a substantial balance remains unpaid.

As of June 30, 2015, petitioners' aggregate unpaid liabilities for 2005 and 2013 were $6,000,797 and $381,139, respectively.  In an effort to collect these liabilities the IRS sent each petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing.  On July 13, 2015, petitioners timely requested a CDP hearing and checked the box "Offer in Compromise."  They attached to their hearing request a letter from their attorney indicating their intention to submit an OIC based on effective tax administration.  They also challenged their underlying tax liability for 2005.

On February 25, 2016, a settlement officer (SO) from the IRS Appeals Office sent petitioners' counsel a letter scheduling a telephone CDP hearing for March 23, 2016.  The letter explained that, in order for the SO to consider an OIC, petitioners would need to submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, supporting financial information for the Form 433-A, and a Form 656, Offer in Compromise.  The SO set

[*5] deadlines of March 12, 2016, for submission of the financial information and March 17, 2016, for submission of the OIC package. Petitioners submitted nothing by those deadlines.

During a March 21 telephone call petitioners' representative asked that the CDP hearing be rescheduled to April 13, and the SO granted this request. During the call the SO emphasized that, if petitioners wished her to consider an OIC, they needed to submit financial information. Noting that she had received nothing so far, she warned that, if petitioners failed to supply the requested information for her review before the CDP hearing date, they would not be given any additional time to do so.

The CDP hearing was held on April 13. The SO explained that petitioners could not challenge their underlying tax liability for 2005, having waived that right by executing a settlement with Appeals and signing the Form 870-AD. During the hearing petitioners did not challenge their self-reported liability for 2013.

With respect to collection alternatives, the SO observed that petitioners had made no offer and had submitted none of the forms or financial documentation she had requested. She explained that she could not consider a collection alternative without that information. Petitioners' representative replied that petitioners did not intend to submit any financial information, believing it to be unnecessary in

**[\*6]** the case of an OIC predicated on effective tax administration. He stated that petitioners planned to submit an offer of that type by April 29; the SO replied that she would grant no further extensions. The SO accordingly closed the case and, on April 30, 2016, the IRS issued each petitioner a notice of determination sustaining the levy.

Petitioners timely petitioned this Court seeking review of the determination. In their petition they allege that they submitted to the IRS on May 2, 2016, an OIC based on effective tax administration, offering to compromise their tax liabilities for 2005, 2008, 2009, 2010, 2011, 2012, and 2013 for $2,034,216. Acknowledging receipt of this offer, respondent states that the IRS rejected it because petitioners refused to submit any financial information.

## Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judg-

**[\*7]** ment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. <u>Sundstrand Corp.</u>, 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); <u>see</u> <u>Sundstrand Corp.</u>, 98 T.C. at 520.

In their opposition to the summary judgment motion, petitioners make numerous assertions concerning the IRS examination of their 2005 return and the alleged loss of their original tax records. As explained more fully below, we conclude that none of these allegations creates a genuine dispute of material fact. We accordingly find this case appropriate for summary adjudication.

B.      Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. But our case law tells us what standard to adopt. Where the validity of the taxpayers' underlying tax liabilities is properly at issue, we review the IRS' determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not before us, we review the IRS decision for abuse of discretion. <u>Ibid.</u>

**[*8]** C.        Underlying Tax Liability

Petitioners seek to challenge their underlying tax liability only with respect

to their 2005 taxable year.[2]  A taxpayer may challenge the existence or amount of

his underlying liability in a CDP proceeding only "if the person did not receive

any statutory notice of deficiency for such liability or did not otherwise have an

opportunity to dispute" it.  Sec. 6330(c)(2)(B).  Respondent contends that petition-

ers cannot challenge their underlying liability for 2005 because they had a prior

opportunity to dispute that liability in this Court but waived their right to do so by

signing Form 870-AD.  On this point we agree with respondent.

Ordinarily, if the IRS makes an adjustment to a taxpayer's return and issues

a notice of deficiency setting forth that adjustment, the taxpayer has 90 days to file

a petition for redetermination with this Court.  See sec. 6213(a).  If a taxpayer files

a timely petition, there can be no assessment of the deficiency before the Court has

---

[2]Petitioners did not dispute their 2013 liability during the CDP hearing or in their petition to this Court, and that issue is thus deemed waived.  See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); Thompson v. Commissioner, 140 T.C. 173, 178 (2013) (noting that a taxpayer "is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing").  Petitioners have advised the Court that they are working with the IRS to resolve their 2013 tax liability outside of this CDP case.  This has no effect on our jurisdiction to consider the propriety of the IRS collection action under review.  See, e.g., Ahmad v. Commissioner, T.C. Memo. 2011-269.

**[*9]** rendered a decision. <u>See</u> secs. 6215(a), 7485(a). But taxpayers may elect to waive the restrictions on assessment set forth in section 6213(a). Section 6213(d) provides that "[t]he taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency."

One way a taxpayer can waive the restrictions on assessment is by executing a Form 870-AD upon reaching a settlement with the IRS Appeals Office. This form states:

> Under the provisions of section 6213(d) * * * the undersigned offers to waive the restrictions provided in section 6213(a) * * * and to consent to the assessment and collection of the following deficiencies and additions to tax, if any, with interest as provided by law.

At the examination level taxpayers can effect an equivalent waiver by executing Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment. That form similarly states: "I consent to the immediate assessment and collection of any deficiencies * * *. I understand that by signing this waiver, I will not be able to contest these years in the United States Tax Court."

**[*10]** This Court has consistently held that taxpayers who execute Form 870 or 870-AD cannot thereafter contest in a CDP proceeding the liabilities covered by those agreements. As we explained in Estate of Deese v. Commissioner, T.C. Memo. 2007-362, 94 T.C.M. (CCH) 546, 547: "[B]y submitting the Form 870-AD, consenting to the immediate assessment and collection of their deficiencies, * * * [the taxpayers] waived their right to a notice of deficiency and gave up any right to challenge their underlying liabilities in a collection proceeding." We have similarly ruled that "[t]axpayers who execute a Form 870 * * * waive their right to receive a notice of deficiency and, hence, the right to contest the underlying liability in a subsequent collection action." Lance v. Commissioner, T.C. Memo. 2009-129, 97 T.C.M. (CCH) 1670, 1671; see Rivera v. Commissioner, T.C. Memo. 2003-35, 85 T.C.M. (CCH) 832, 835 ("By signing Form 870, petitioner waived his right to a notice of deficiency and exhausted his opportunity to contest the tax liability."), aff'd, 102 F. App'x 594 (9th Cir. 2004).

Petitioners' authorized representative executed a valid Form 870-AD on their behalf, and the IRS accepted it on March 1, 2013. By this agreement petitioners consented to the immediate assessment of the agreed-upon liability and waived their right to receive a notice of deficiency, which would have entitled them to contest their 2005 liability in this Court. Because petitioners had, but

**[*11]** elected to forgo, a prior opportunity to challenge that liability, they were foreclosed from disputing it during the CDP proceeding. See sec. 6330(c)(2)(B). As we noted in Aguirre v. Commissioner, 117 T.C. 324, 327 (2001): "The fact that section 6330 now provides an opportunity to contest tax liability for taxpayers who did not receive a notice of deficiency * * * provides no consolation to petitioners who themselves made the choice not to receive such notice."

Petitioners contend that the Form 870-AD agreement should not bind them, because of alleged errors by the IRS and/or the U.S. Department of Justice (Justice Department). Petitioners allege that the accountant who prepared their 2005 return provided their original tax records to the IRS in connection with its examination of that return. The IRS forwarded some or all of those records to the Tax Division of the Justice Department, and petitioners' representatives in August 2010 requested those documents back.

In November 2010 the Justice Department returned to petitioners "a binder containing the documents that the Government received" from their accountant. But petitioners insist that there were other records, not contained in the binder, which were never returned to them and are now lost. The loss of those records, petitioners contend, complicated their task of reconstructing their cost bases in certain stock they sold during 2005.

**[*12]** Petitioners assert that execution of the Form 870-AD does not bar them from disputing their 2005 tax liability "because the IRS failed to disclose and concealed material facts." But petitioners have failed to identify any facts that the IRS could be thought to have concealed or neglected to disclose. If any of petitioners' records were lost, petitioners and their attorneys were fully aware of that fact no later than November 2010, when the Justice Department returned to them what it described as "a binder containing the documents that the Government received" from their accountant.

Notwithstanding this knowledge, petitioners prosecuted a protest to the IRS Appeals Office, negotiated with Appeals concerning their 2005 tax liability, and settled the case with Appeals by executing a Form 870-AD in February 2013. If petitioners believed they were handicapped by the alleged loss of records, they were free to demand (and may have demanded) corresponding concessions from Appeals. Or they could have declined a settlement and taken their chances in court. They elected instead to settle the case on the basis of hazards of litigation by executing a Form 870-AD.

For these reasons we conclude that petitioners have alleged no facts sufficient to create a material dispute of fact concerning the validity of the Form

**[*13]** 870-AD. As explained previously, their execution of that agreement fore-closes them from disputing in this CDP case their underlying tax liability for 2005.[3]

D. Abuse of Discretion

Where a taxpayer's underlying liability is not properly before us, we review the IRS' determinations for abuse of discretion only. See Goza, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); see also Keller v. Commissioner, 568 F.3d 710, 716 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166.

In deciding whether the SO abused her discretion in sustaining the collection actions, we consider whether she: (1) properly verified that the requirements of any applicable law or administrative procedure had been met;[4] (2) considered

---

[3]Petitioners cite cases holding that execution of a Form 870-AD does not necessarily prevent a taxpayer from later filing a refund suit. See, e.g., Whitney v. United States, 826 F.2d 896 (9th Cir. 1987). But the question in this CDP case is not whether the Form 870-AD bound petitioners for all purposes, but whether by executing that agreement they waived a prior opportunity to dispute their 2005 liability in this Court. The answer to that question is clearly "yes."

[4] Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment" receives supervisory approval. This provision does not apply to "any addition to tax under section

(continued...)

**[*14]** any relevant issues petitioners raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

We conclude that the SO satisfied all of these requirements. Petitioners expressed interest in an OIC. But they failed to submit by the SO's deadline either an actual offer on Form 656 or the financial information (including Form 433-A) required for consideration of a collection alternative. The SO warned petitioners' representative during their March 21 telephone call that, if petitioners failed to supply the required information for her review before the CDP hearing date, they would not be given any additional time to do so.

Petitioners supplied none of the required financial information before the CDP hearing on April 13. Indeed, petitioners' representative informed the SO during that hearing that petitioners would not submit any financial information, asserting that it was unnecessary because their intended OIC would be based on effective tax administration. That assertion was incorrect: The Internal Revenue

---

[4](...continued)
6651, 6654, or 6655." Sec. 6751(b)(2)(A). Accordingly, the SO was not required to verify that the $509,136 addition to tax assessed against petitioners for 2005 under section 6651(a)(1) had been approved by a supervisor.

[*15] Manual (IRM) requires Appeals officers to conduct, for an OIC based on effective tax administration, the same financial analysis as for an OIC based on doubt as to collectibility, thus enabling the IRS to determine the taxpayer's reasonable collection potential and an acceptable offer amount. See IRM pt. 5.8.11.4.2 (Aug. 5, 2015); id. pt. 5.8.11.1(6) ("The taxpayer must include the Collection Information Statement (CIS) (Form 433-A (OIC)) * * * when submitting an offer requesting consideration under ETA."). An Appeals officer does not abuse her discretion when following IRM guidelines in evaluating collection alternatives. Lemann v. Commissioner, T.C. Memo. 2006-37, 91 T.C.M. (CCH) 846, 851.

We have consistently held that it is not an abuse of discretion for an Appeals officer to reject collection alternatives and sustain the proposed collection action where taxpayers have failed to put a specific offer on the table and have failed, after being given sufficient opportunities, to supply the SO with the required forms and supporting financial information. See Huntress v. Commissioner, T.C. Memo. 2009-161; Prater v. Commissioner, T.C. Memo. 2007-241; Roman v. Commissioner, T.C. Memo. 2004-20. Petitioners had more than two months to submit the financial information the SO had requested. When they submitted none

**[*16]** and told the SO that they did not intend to submit any, she did not abuse her discretion by closing the case.

Finding no abuse of discretion in this or in any other respect, we will grant respondent's motion for summary judgment and affirm the proposed collection action as to 2005 and 2013. Petitioners are advised that they are free to submit to the IRS, for its consideration and possible acceptance, an OIC on Form 656 supported by the necessary financial information.[5]

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.

---

[5]Before and after the CDP proceeding, petitioners submitted no fewer than six OICs seeking to compromise their outstanding tax liabilities. The SO did not consider any of these offers, and they are irrelevant to our determination in this case.